United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| J.Z.,<br><br>            Plaintiff,<br><br>     v.<br><br>ANDREW SAUL,<br><br>            Defendant. | Case No. 20-cv-00154-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 25, 29 |

**INTRODUCTION**

The plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability benefits under Title II of the Social Security Act.[1] He moved for summary judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[3] In this second appeal, following the court's earlier remand for further proceedings, the plaintiff challenges whether the Administrative Law Judge (ALJ) failed to properly weigh medical-opinion evidence on remand.

---

[1] Compl. – ECF No. 1 at 2; Mot. – ECF No. 25 at 3. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 25.

[3] Cross Mot. – ECF No. 29.

United States District Court
Northern District of California

1

2    Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral

3    argument. All parties consented to magistrate-judge jurisdiction.[4] The court grants the plaintiff's

     motion, denies the Commissioner's cross-motion, and remands for further proceedings.

4

5                                        **STATEMENT**

6    **1. Procedural History**

7        On December 10, 2012, the plaintiff filed an application for social-security-disability

8    insurance benefits.[5] The Commissioner denied his claim by initial determination on April 4,

9    2013.[6] The plaintiff asked for reconsideration of the initial denial on April 17, 2013.[7] The

10   Commissioner denied reconsideration on November 6, 2013.[8] The ALJ conducted an oral hearing

11   on November 25, 2014 and a supplemental hearing on July 8, 2015.[9] The ALJ issued an

12   unfavorable decision on July 30, 2015.[10] On March 14, 2017, the Appeals Council denied the

13   plaintiff's request for review, and the ALJ's decision became the final administrative decision.[11]

14   The plaintiff timely filed a complaint for review of the final administrative decision on May 10,

15   2017.[12] On December 27, 2018, the court granted the plaintiff's motion for summary judgment

16   and remanded the case for further administrative proceedings on the grounds that the ALJ erred by

17   failing to properly weigh medical-opinion evidence and erred by failing to consider the plaintiff's

18   testimony.[13]

19

20

21   _____

     [4] Consents – ECF Nos. 6, 11.

22   [5] AR 318–24.

23   [6] AR 115–23.

24   [7] AR 152.

     [8] AR 124–36.

25   [9] AR 47–65, 66–114.

26   [10] AR 26–46.

27   [11] AR 1–4.

     [12] AR 1369–70; *Zavala v. Comm'r* ("*Zavala I*"), No. 17-cv-02715-LB, ECF No. 1.

28   [13] *Zavala I*, ECF No. 31.

1    On remand, a different ALJ held a hearing on July 15, 2019, and on October 1, 2019, denied

2  the plaintiff's claim.[14] The plaintiff timely filed this action and then moved for summary

3  judgment.[15] The Commissioner opposed the motion and filed a cross-motion for summary

4  judgment.[16] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[17]

5

6  **2.  Medical Records**

7    The issue is the plaintiff's lower-back injury.[18] The following medical records were submitted:

8  (1) treatment and progress notes of David W. Chow, M.D.;[19] (2) the medical opinion of Calvin

9  Pon, M.D.;[20] (3) visit notes of Susan Gutierrez, M.D.;[21] (4) case-development worksheets from

10  Disability Determination Services;[22] and (5) the medical opinion of Eric D. Schmitter, M.D.[23]

11    Because the plaintiff challenges the ALJ's weighing of medical opinions, this order recounts

12  the relevant opinions considered by the ALJ.

13  **2.1    David W. Chow, M.D. — Treating Physician**

14    Dr. Chow, a spine-care and pain-management specialist, treated the plaintiff from February

15  2011 through June 2019.[24] He saw the plaintiff primarily for "bilateral low back pain radiating

16

17

18

19

---

20  [14] AR 1266–88; 1289–1335.

21  [15] Compl. – ECF No. 1; Mot. – ECF No. 25.

    [16] Cross Mot. – ECF No. 29.

22  [17] Consents – ECF Nos. 6, 11.

23  [18] AR 115.

24  [19] AR 545–603, 607–30, 641–90, 712–38, 744–836, 892–1087, 1117–1265, 1814–1953.

    [20] AR 604–06.

25  [21] AR 739–43.

26  [22] AR 599–603, 631–35, 637–40.

27  [23] AR 691–700.

    [24] AR 545–603, 607–30, 641–90, 712–38, 800, 972–78, 1814–1953. The court does not consider Dr.
28  Chow's opinions from before the alleged onset date of November 28, 2012.

into the right buttock and right posterior thigh."[25] He noted that the plaintiff stopped working in late November 2012 due to pain.[26]

From December 2012 through June 2019, Dr. Chow reported the following about the plaintiff's musculoskeletal and spine examinations. The plaintiff's skin was within normal limits in all limbs, except for a well-healed scar from his L5–S1 fusion. His "[l]umbar ranges of motion were restricted by pain in all directions." He had "tenderness upon palpation of the mid lumbar spine overlying the L4 to S1 regions and bilateral lumbar paraspinal muscles overlying the L4 to S1 facet joints." His "thoracolumbar muscle spasm" and "[l]umbar discogenic provocative maneuvers" were positive. His nerve-root tension signs were negative bilaterally, muscle stretch reflexes were symmetric bilaterally in the lower extremities, and Clonus, Babinski's, and Hoffmann's signs were absent bilaterally. The plaintiff's muscle strength was "5/5" in his bilateral lower extremities.[27] The plaintiff had the following conditions: right S1 radiculopathy;[28] status post-percutaneous spinal-cord-stimulator trial; status post-L5–S1 lumbar fusion with hardware removal; lumbar-disc protrusion; lumbar stenosis; lumbar-degenerative-disc disease; lumbar-facet-joint arthropathy; lumbar sprain/strain; and gastrointestinal upset secondary to industrially related medications.[29]

Beginning April 2013, the plaintiff's muscle strength was "4+/5 in the right extensor hallucis longus and gastrocnemius and soleus." His muscle strength remained "5/5" in the bilateral lower extremities.[30]

"Prolonged sitting and standing, lifting, twisting, driving, and any activities" exacerbated the plaintiff's conditions. "Lying down on [his] back, sitting, stretching, and medications" mitigated

---

[25] AR 545–603, 607–738, 800, 972–78, 1814–1953.

[26] AR 554.

[27] AR 545–603, 607–30, 641–90, 712–38, 972–78, 1814–1953.

[28] Radiculopathy is "a nerve disorder that causes radiating pain." *Hanson v. Colvin*, 760 F.3d 759, 760 (7th Cir. 2014).

[29] AR 545–603, 607–30, 641–90, 712–38, 972–78, 1814–1953.

[30] *Id.*

them.[31] Dr. Chow prescribed the plaintiff pain medications, including OxyContin, Percocet, Soma, and Baclofen.[32]

On November 25, 2014, Dr. Chow submitted a medical-source statement. The plaintiff could stand/walk no more than two hours in an eight-hour workday and between two to four hours total during the day. The plaintiff could sit no more than two hours in an eight-hour workday and between four to five hours during the day. He had no restrictions in using his hands, fingers, or feet in repetitive motions or being exposed to environmental factors such as heat, cold, dust, dampness, or height. He could occasionally lift and carry between 10 to 20 pounds and could never lift or carry 20 pounds or more. He could never climb, stoop, or reach below the knees or from waist to knees. He could occasionally balance, kneel, crouch, crawl, and reach from waist to chest. He could frequently reach from his chest to above his shoulders. The plaintiff took opioid-analgesic medications, which caused dizziness and somnolence.[33]

On February 6, 2019, Dr. Chow submitted an updated medical-source statement. [34] He had seen the plaintiff every month for the past five years. The plaintiff could stand/walk for no more than 30 minutes at a time and no more than two hours in an eight-hour workday. He could sit for no more than one hour at a time and for four hours in an eight-hour workday.[35] He needed a job that permits shifting positions at will from sitting, standing, or walking, and needed to take unscheduled five-minute breaks every two hours. He could lift 10 pounds rarely and could never lift 20 pounds or more. He had no restrictions in the use of his neck and arms. He could never climb ladders or stoop, rarely twist or crouch, and occasionally climb stairs. [36] The plaintiff's

---

[31] *Id.*

[32] This order incorporates by this reference the court's summary of Dr. Chow's notes on the plaintiff's pain medications from its order in the plaintiff's first appeal. *Zavala I*, ECF No. 31 at 5–8. Because the ALJ did not consider the plaintiff's pain medications in her determination and because the plaintiff does not challenge or address the plaintiff's pain medications in challenging the ALJ's weighing of medical evidence, the court does not re-summarize that portion of Dr. Chow's treatment here.

[33] AR 689–90.

[34] AR 1808–10.

[35] AR 1808.

[36] AR 1809.

United States District Court
Northern District of California

impairments were likely to produce "good days" and "bad days," resulting in the plaintiff's being absent from work about two days per month.[37]

### 2.2    Calvin Pon, M.D. — Examining Physician

Dr. Pon reviewed the plaintiff's medical record, including the progress reports by Dr. Chow, and examined the plaintiff on October 15, 2013.[38] The plaintiff suffered a work-related low-back injury in 2001 while employed as a carpenter. He then had two lumbar-spine surgeries, one in 2003 and the second in 2004. The plaintiff chose not to have a third recommended surgery.[39]

The plaintiff complained of left-lower-extremity pain and numbness that he had before the surgery. After the surgery, his right-lower-extremity pain and numbness improved slightly. Dr. Pon said that the plaintiff could sit for one hour, stand for one hour, walk less than a mile, and climb stairs.[40]

The plaintiff reported that he dressed independently, fed himself independently, and did not cook or prepare his own meals. He needed some assistance with grocery shopping. He was independent in hygiene, washed the dishes, took out the garbage, vacuumed, and swept and mopped the floor, but he did not do laundry. He drove to his appointment with Dr. Pon that day. The plaintiff's medication included Oxycontin, Percocet, Soma, and Methocarbamol.[41]

The plaintiff sat "comfortably," was able to rise from his chair, and stood "erect normally." He stood with most of his weight bearing on his left-lower extremity. The plaintiff's gait was stable but "slightly less than normal" in velocity and stride length. He had a slight limp on the right. He was able to squat "approximately one-half of the way down" but was "limited by low back pain and right lower extremity pain and numbness.[42]

---

[37] AR 1810.

[38] AR 604–06.

[39] AR 604.

[40] *Id.*

[41] *Id.*

[42] AR 605.

United States District Court
Northern District of California

The plaintiff had "relatively full active ROM [range of motion]" in his neck. He could "abduct and forward flex" both shoulders to 150 degrees. He had full active range of motion of his elbows and wrists in flexion and extension. Dr. Pon found the following with respect to the plaintiff's manual motor-muscle testing: "[s]houlders bilaterally 5/5 . . . right grip strength 5/5, left grip strength 5/5, bilateral pinch strength normal." The plaintiff's fine-finger movements were intact bilaterally, he could pick up a coin normally with both hands, and he was able to write legibly with his right hand.[43]

The plaintiff could "extend both hips to neutral, flex his left hip to approximately 70 degrees limited by low back pain, [and] flex his right hip approximately 30 degrees limited by low back pain." He had full active range of motion of his left knee in extension and flexion, but left-knee flexion was approximately 130 degrees "limited by low back pain and right lower extremity pain and numbness." Dr. Pon found the following with respect to the plaintiff's manual motor-muscle testing: "[l]eft hip 4–/5 limited by low back pain, right hip 2+ to 3–/5 limited by low back pain, left knee extensors and flexors 5/5, right knee extensors 5/5, right knee flexors 4/5 limited by low back pain, bilateral ankle dorsiflexors and plantar flexors 5/5."[44]

The plaintiff had lumbar-disc disease, lumbar stenosis, lumbar-degenerative-disc disease, and lumbar-facet-joint arthropathy. He had right S1 radiculopathy. The plaintiff had a "slight limp on the right during ambulation and symptomatic limitation in his ability to squat."[45]

The plaintiff had the following functional capacity:

> [The plaintiff] should be able to stand and/or walk for a total of 6 hours during an 8 hour workday. He should be able to sit for a total of 6 hours during an 8 hour workday. Stooping should be limited to occasionally. He is able to perform limited crouching, kneeling and squatting occasionally. Climbing stairs should be limited to occasionally. Climbing ladders should be limited from rarely to occasionally. Crawling should be limited to occasionally.
>
> There is no restriction in performing bilateral pushing and pulling arm/hand control. There is no restriction in performing pushing left leg/foot control. In spite of his complaint of right lower extremity pain and numbness, he should still be able to perform pushing right

---

[43] *Id.*

[44] *Id.*

[45] AR 606.

United States District Court
Northern District of California

leg/foot control frequently. He should be able to lift and carry 10 lbs. and occasionally 20 lbs. There is no limitation in reaching bilaterally. There is no limitation in his ability to perform gross and fine manipulative tasks with both hands.

Regarding his ability to travel, he does drive. He is also able to take public transportation.[46]

### 2.3   Eric D. Schmitter, M.D. — Non-Examining Physician

In March 2015, at the request of the first ALJ, Eric D. Schmitter, M.D., an orthopedic surgeon, submitted a medical-source statement evaluating the plaintiff's alleged disability.[47] The plaintiff had chronic lumbar-spine pain and post-fusion L5–S1. Consequently, he could never lift or carry over 20 pounds, he could occasionally lift and carry between 11 and 20 pounds, and he could frequently lift and carry up to 10 pounds.[48] The plaintiff could sit, stand, and walk for up to four hours without interruption and could sit, stand, and walk for up to six hours total in an eight-hour workday. He did not need a cane to ambulate.[49]

The plaintiff had no upper-extremity pathology. He could "continuously" perform reaching, handling, fingering, feeling, pushing, and pulling with both hands. He had no neurologic deficit and could operate both feet "continuously."[50]

The plaintiff could do the following: occasionally climb ladders/scaffolds, stoop, kneel, crouch, and crawl; frequently balance; and continuously climb stairs and ramps.[51] He could frequently tolerate exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. He could continuously tolerate exposure to operating a motor vehicle and was physically capable to shop, travel alone without assistance, ambulate without aid, use public transportation, climb "a

---

[46] *Id.*

[47] AR 691–700.

[48] AR 692.

[49] AR 693.

[50] AR 694.

[51] AR 695.

few steps at a reasonable pace with the use of a single hand rail," prepare simple meals, feed himself, care for his personal hygiene, and manage paper/files.[52]

Dr. Schmitter found that the plaintiff's "subjective complaints appear to exceed [the] physical finding[s]." He also found that he was addicted to prescribed narcotics.[53] He opined that the plaintiff had the residual-functional capacity (RFC) to perform light activity.[54]

### 3. Administrative Proceedings

#### 3.1 Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one at the initial level and one at the reconsideration level.[55]

At the initial level, C. Eskander, M.D., determined the plaintiff had one impairment: severe discogenic and degenerative disorder of the back.[56] The plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for a total of six hours, and sit for a total of six hours in an eight-hour workday. He might need to alternate sitting and standing and change position while sitting once every hour for one to two minutes. He had postural limitations but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. He could never climb ladders, ropes, or scaffolds.[57] Because the plaintiff's RFC allowed the plaintiff to sustain light work, Dr. Eskander concluded that the plaintiff was not disabled.[58]

On reconsideration, Jogendra Singh, M.D., found the same impairment as Dr. Eskander: severe discogenic and degenerative disorder of the back.[59] He reached the same RFC findings: (1) the plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; (2)

---

[52] AR 696–97.

[53] AR 697.

[54] AR 700.

[55] AR 115–36.

[56] AR 117–18.

[57] AR 119.

[58] AR 121.

[59] AR 130.

United States District Court
Northern District of California

1  he could stand or walk for a total of six hours and sit for total of six hours in an eight-hour

2  workday; (3) he might need to alternate sitting and standing and change position while sitting once

3  every hour for one to two minutes; (4) he could occasionally climb ramps or stairs, balance, stoop,

4  kneel, crouch, and crawl; and (5) he could never climb ladders, ropes, or scaffolds.[60] Dr. Singh

5  determined that the plaintiff was not disabled.[61]

6  ### 3.2   Administrative Hearing

7  On July 15, 2019, the ALJ conducted a de novo hearing following remand.[62]

8  #### 3.2.1   Testimony of Arnold Ostrow, M.D. — Non-Examining Physician

9  Dr. Ostrow reviewed the medical evidence in this case and gave testimony at the July 15, 2019

10  hearing.[63] The plaintiff's medically determinable impairments included the following: (1)

11  lumbosacral-discogenic disease; (2) post-fusion from the lumbosacral spine; (3) post-placement of

12  a spinal-cord stimulator; and (4) removal of hardware.[64] The onset date of these conditions was

13  2004.[65]

14  Dr. Ostrow testified that the plaintiff's impairments did not rise to the level of a listing

15  impairment either meeting or equaling any of the medical listings.[66] He addressed listing 1.04 and

16  determined that the plaintiff's impairments did not meet that listing because there was no evidence

17  of nerve-root compression, muscular atrophy, neurologic impairment, or fasciculation.[67]

18  The plaintiff had the following residual functional capacity:

19  [The plaintiff could] lift[] 20 pounds occasionally, 10 pounds frequently, stand and walk
20  for six hours in an eight hour day, sit for six hours in an eight hour day, no restriction in
    the use of the upper extremities, lower extremities, no foot pedals bilaterally, the posturals

21

22  _____

23  [60] AR 132.

24  [61] AR 134.

25  [62] AR 1289–1335.

26  [63] AR 1298–1305.

27  [64] AR 1300.

27  [65] AR 1303–04.

27  [66] AR 1301.

28  [67] AR 1301–02.

United States District Court
Northern District of California

are all occasional, climbing stairs occasionally, no ropes, no ladders, no scaffolding and totally precluded from working at unprotected heights[.][68]

Dr. Ostrow acknowledged that his opinion differed from the opinion of an examining physician (but could not recall the physician). When asked to explain, he stated that he did not examine the plaintiff and based his opinion "purely on the objective medical records," and in his opinion, the examining "physician did not document objective evidence to warrant the degree of functional impairment that he listed or she listed."[69] When asked whether it was reasonable for another doctor who never examined the plaintiff to reach a different opinion and conclude the plaintiff possibly equaled listing 1.04A, Dr. Ostrow said that it was possible.[70]

### 3.2.2    Testimony of the Plaintiff

The plaintiff testified with the aid of an interpreter. He had surgery on his back in 2003 and went back to work from 2005 to 2012, but he had not worked since November 28, 2012, when his symptoms became too severe to continue working. He experienced "a lot of pain," which felt like an "electric shock."[71] His day-to-day activities varied. On bad days, he could do "nothing." This happened three or four days a week, sometimes five, and he typically had a bad day after exerting himself.[72] On good days, he could take his children to school and do some light cleaning and sweeping, but he had trouble dishwashing.[73] He could lift 15 pounds, and maybe as much as 25 or 30 pounds, but he had pain in his shoulders that made lifting things difficult.[74] He could walk a quarter of a mile slowly, or around 20 to 25 minutes, before he began to feel stabbing pain in his buttocks and a radiating electrical sensation down his legs. If he rested for 10 minutes, he could

---

[68] AR 1302.

[69] AR 1303.

[70] AR 1304–05.

[71] AR 1308–10.

[72] AR 1311.

[73] AR 1311, 1314.

[74] AR 1311, 1318.

United States District Court
Northern District of California

begin walking again.[75] He could sit for an hour or an hour and a half before he began to feel cramping and needed to stand up for 15 to 20 minutes.[76]

### 3.3   Administrative Findings

The ALJ followed the five-step process to determine whether the plaintiff was disabled and concluded that he was not.

At step one, the ALJ found that the plaintiff did not engage in substantial gainful activity during the period from November 28, 2012 through his last-insured date of March 31, 2018.[77]

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) degenerative-disc disease of the lumbar spine with radiculopathy; and (2) status post-fusion and hardware removal surgeries.[78]

At step three, the ALJ found that the plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments.[79]

Before reaching step four, the ALJ determined the plaintiff's RFC:

> [T]he claimant had the [RFC] to perform less than the full range of light work as defined in 20 CFR 404.1567(b). He could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could sit for 6 hours, and could stand or walk for 6 hours in an 8-hour workday. He could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. He could occasionally use foot controls bilaterally with the lower extremities. He should avoid concentrated exposure to extreme cold and to industrial vibration, and should avoid all exposure to workplace hazards such as unprotected heights and moving machinery. He would need the ability to change positions by standing or sitting hourly, for up to 10 minutes at the workstation, while remaining on task.[80]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[81]

---

[75] AR 1312–13.

[76] AR 1313–14.

[77] AR 1274.

[78] *Id.*

[79] AR 1275.

[80] *Id.*

[81] AR 1278.

1    At step five, the ALJ found that the following jobs were available to the plaintiff: (1) cashier;

2    (2) merchandise marker; and (3) routing clerk.[82]

3    The ALJ concluded that the plaintiff was "not disabled."[83]

4

5                                    **STANDARD OF REVIEW**

6    Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

7    Commissioner if the claimant initiates a suit within 60 days of the decision. A court may set aside

8    the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are

9    not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586,

10   591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a

11   mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

12   might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

13   Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the

14   [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293

15   (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a

16   different outcome, the court must defer to the ALJ's decision and may not substitute its own

17   decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097– 98 (9th Cir. 1999). "Finally, [a court] may not

18   reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d

19   1104, 1111 (9th Cir. 2012).

20                                    **GOVERNING LAW**

21   A claimant is considered disabled if (1) he suffers from a "medically determinable physical or

22   mental impairment which can be expected to result in death or which has lasted or can be expected

23   to last for a continuous period of not less than twelve months," and (2) the "impairment or

24   impairments are of such severity that he is not only unable to do his previous work but cannot,

25   considering his age, education, and work experience, engage in any other kind of substantial

26

27   _____

     [82] AR 1279.

28   [83] AR 1280.

United States District Court
Northern District of California

gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The

five-step analysis for determining whether a claimant is disabled within the meaning of the Social

Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).

> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).

> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).

> **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).

> **Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the claimant has the burden of proof. At step five, the burden shifts to the

Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by improperly weighing medical evidence and

assigning insufficient weight to the opinion of the plaintiff's treating physician, Dr. Chow, without

providing specific and legitimate reasons for doing so.[84] The court remands on this ground.

---

[84] Mot. – ECF No. 25 at 7–14.

United States District Court
Northern District of California

### 1.  Legal Standard

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (cleaned up). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[85] Social Security regulations identify three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non- examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The

---

[85] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, applies here. *See* 20 C.F.R. § 404.614(a).

1    opinions of non-treating or non-examining physicians may also serve as substantial evidence when

2    the opinions are consistent with independent clinical findings or other evidence in the record."

3    *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

4        An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation

5    or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with

6    boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d

7    at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the

8    treating physician, include the amount of relevant evidence that supports the opinion and the

9    quality of the explanation provided[,] the consistency of the medical opinion with the record as a

10   whole[, and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631 (citing

11   20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir.

12   1989) (an ALJ need not agree with everything contained in the medical opinion and can consider

13   some portions less significant than others).

14

15   **2. Application**

16       In assessing the plaintiff's residual functional capacity, the ALJ gave significant weight to Dr.

17   Ostrow's opinion, substantial weight to Dr. Pon's opinion, partial weight to Dr. Chow's April

18   2014 opinion, some weight to Dr. Schmitter's opinion, and little weight to Dr. Chow's February

19   2019 opinion.[86] The plaintiff contends that the ALJ erred by giving treating physician Dr. Chow's

20   opinions insufficient weight.[87]

21       Because Dr. Chow is a treating physician, and his opinion was contradicted by the opinions of

22   Dr. Pon and Dr. Ostrow, the ALJ was required to provide specific and legitimate reasons to reject

23   Dr. Chow's opinion. She did not do so.

24       In assigning only partial weight to Dr. Chow's April 2014 opinion, the ALJ stated:

25       The undersigned gives partial weight to the April 2014 opinion of treating physician Dr.
         Chow, who opines that the claimant could lift 20 pounds occasionally, sit for 4–5 hours

26

27   ───────────────
     [86] AR 1277–78.

28   [87] Mot. – ECF No. 25 at 7–14.

United States District Court
Northern District of California

total during the day, for up to 2 hours at a time, and stand or walk for 2 to 4 hours total, for up to two hours at a time. Similar to Drs. Pon and Ostrow, Dr. Chow found the claimant capable of occasional postural activities; however, he opined the claimant could never stoop or climb. . . . While Dr. Chow's opinion is consistent with light lifting, the undersigned finds that the weight of the evidence, including the opinion evidence, supports greater capacity for standing and walking."[88]

The ALJ gave insufficient reasons for discounting Dr. Chow's opinion. She acknowledged that Dr. Chow's opinion was consistent with the opinions of Drs. Pon and Ostrow but gave greater weight to Dr. Pon's and Dr. Ostrow's opinions on the plaintiff's capacity for standing, walking, stooping, and climbing. The ALJ's statement that "the weight of the evidence, including the opinion evidence, supports greater capacity for standing and walking" is vague. It does not identify what specific evidence "supports greater capacity for standing and walking." It does not explain why Dr. Chow's differing opinion should be given less weight, and it does not take into account the relevant factors, such as length, nature, or extent of the treatment. *See Garrison*, 759 F.3d at 1012–13. "This failure alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

In *Trevizo*, as here, the ALJ afforded the treating physician's opinion little weight in favor of another doctor's opinion. *Id.* at 675–76. Because the ALJ did not apply the factors listed in 20 C.F.R. § 404.1527 in determining the extent to which the opinion should be credited, and because she did not offer "specific and legitimate reasons" for rejecting the treating physician's opinion, the rejection was reversible legal error. *Id.* at 676.

The ALJ here similarly did not consider the appropriate factors and give specific and legitimate reasons for adopting Dr. Pon's and Dr. Ostrow's opinions on the plaintiff's capacity for standing and walking (instead of Dr. Chow's opinion). Thus, the assignment of only partial weight to Dr. Chow's 2014 opinion is reversible error.

The ALJ also gave little weight to Dr. Chow's February 2019 opinion, stating:

The undersigned gives little weight to Dr. Chow's February 2019 opinion, which provides for sedentary limitations, unscheduled breaks, and absences due to "bad" days approximately two days per month. . . . This opinion is inconsistent with the claimant's

---

[88] AR 1277.

longitudinal treatment records, which do not show significant variation in clinical findings, as discussed above. Apart from more consistent findings of a positive straight leg raise test beginning in February 2017, and 4+/5 strength noted in the right calf, the claimant's monthly treatment records consistently indicate that his examinations remain unchanged during the period at issue. . . . Dr. Chow's assessment is also at odds with the remaining medical opinion evidence . . . as well as with that of medical expert Dr. Ostrow.[89]

The ALJ's first reason for giving Dr. Chow's February 2019 opinion little weight is that it was inconsistent with the plaintiff's longitudinal records. The ALJ said that Dr. Chow's change from his 2014 to 2019 opinion was unsupported by the plaintiff's longitudinal records, but the ALJ also acknowledged that Dr. Chow reported more consistent findings of a positive straight leg-raise test beginning in February 2017 and muscle strength of 4+/5 in the plaintiff's right calf. And the ALJ did not provide reasons why these changes recorded in the plaintiff's longitudinal records did not support Dr. Chow's February 2019 opinion. In addition, as with Dr. Chow's 2014 opinion, the ALJ did not consider the relevant factors articulated in *Orn*, as she must when deciding not to give a treating physician's opinion controlling weight "because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record." 495 F.3d at 631.

The ALJ's second reason for giving little weight to Dr. Chow's February 2019 opinion was that it was "at odds with the remaining medical evidence" and Dr. Ostrow's opinion. This is not a specific and legitimate reason and is an error for the reasons already stated. Merely stating that the treating physician's opinion is inconsistent with other opinions, without more, is not enough.

In sum, the ALJ erroneously assigned little weight to Dr. Chow's opinion without providing specific and legitimate reasons.

---

[89] AR 1278.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's

cross-motion, and remands for further proceedings consistent with this order.


**IT IS SO ORDERED.**

Dated: August 9, 2021

_____

LAUREL BEELER
United States Magistrate Judge